# COMMERCE TRUST COMPANY V. P. K. BEST.

No. 6455.   Decided March 27, 1935.
Rehearing overruled May 1, 1935.
(80 S. W., 2d Series, 942.)

*Terrell, Davis, Hall & Clemens*, of San Antonio, for plaintiff in error.

Statutory penalties for receiving and collecting usurious interest are recoverable only from the person, firm or corporation actually receiving and appropriating the same. Dallas Trust & Sav. Bank v. Brown, 48 S. W. (2d) 1044, error refused; Western Bank v. Ogden, 93 S. W., 1104; Liebelt v. Carney (Cal.), 295 Pac., 815.

*C. T. Gettys* and *P. L. Gettys*, of Decatur, for defendant in error.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals.

The case as presented here is an action by defendant in error for the recovery under Article 5073, Revised Civil Statutes of 1925, of double the amount of alleged usurious interest paid by defendant in error. The three principal contentions made by plaintiff in error are: First, that the contract evidenced by the notes and deeds of trust is not usurious, because the terms of the principal notes are controlling and dominant over the acceleration clause in the second deed of trust and bring the case within the rule of Dugan v. Lewis, 79 Texas, 247, 14 S. W., 1024, rather than within the rule of Shropshire v. Commerce Farm Credit Co., 120 Texas, 400, 30 S. W. (2d) 282, 39 S. W. (2d) 11; second, that penalties may not be imposed because a greater rate of interest than ten per cent was not collected on the contract up to the time of the trial; third, that in no event may penalties be recovered from plaintiff in error on account of interest payments which it did not retain but merely collected and transmitted to the owner of the interest coupons.

Defendant in error on May 12, 1921, borrowed $9,500.00

from Commerce Farm Credit Company, executing notes secured by deeds of trust as follows: Two principal notes, one for $9,000.00 due December 1, 1931, and one for $500.00 due December 1, 1921, with ten interest coupons, accompanying the $9,000.00 note, each for $540.00, except the first which is for $297.00, due annually December 1, 1921, to 1930, inclusive, and one interest coupon, accompanying the $500.00 note, in the sum of $16.50 due December 1, 1921; a first deed of trust securing said notes and coupons; five notes given for interest but not so appearing, each in the sum of $517.35, due annually December 1, 1921, to 1925, inclusive; a second deed of trust securing the interest notes last described. Both principal notes provide that they bear interest from date to maturity at the rate of six per cent according to interest coupons.. The interest coupons and the interest notes bear interest from maturity at ten per cent. Each of the principal notes contains the following:

"If this bond or any installment of interest thereon is not paid when due, the principal of this and all other bonds forming a part of this series shall become due and collectible at once without notice at the option of the holder. The principal of this bond from and after its maturity, and all past due interest thereon, shall bear interest at the rate of ten per cent per annum payable annually from due date thereof until paid."

The first deed of trust describes the principal notes secured by it as providing that if the principal or any installment of interest is not paid when due "then the entire indebtedness shall become due and collectible at once at the option of the holder, etc." This deed of trust further provides that if default is made in the payment of the principal or any installment of interest upon said notes, "then at the option of the legal holders of said bonds the same with interest and all other indebtedness and charges secured hereby shall without notice become due and payable and on the application of the said legal holder or holders or any of them the said trustee, his successor or substitute appointed herein is hereby empowered to take possession of the property and sell the same, etc." The second deed of trust states that it is subject to the first deed of trust. It describes the indebtedness which it secures as being promissory notes executed by the grantor aggregating the sum of $2,586.75 due as therein specified and payable to the order of Commerce Farm Credit Company. It provides: "but if the notes secured hereby and each of them are not paid promptly when due, or in case of breach of any of the covenants, terms or agreements in said first deed of trust, then all of said notes hereby secured

shall become due and payable at the election of the holder, and the trustee, his successor or substitute may sell said premises, etc."

Directly after the execution of the foregoing instruments Commerce Farm Credit Company sold all of the principal and interest notes to plaintiff in error, Commerce Trust Company, which in turn sold the $9,000.00 note and its interest coupons to California State Life Insurance Company. A written assignment of the $9,000.00 note and the lien securing it was executed by Commerce Farm Credit Company to California State Life Insurance Company August 2, 1921, and was filed for record October 20, 1922.

At or about the time of their maturity, defendant in error paid the $500.00 principal note and its interest coupon, the interest coupons of the $9,000.00 note to and including the coupon due December 1, 1927, and all of the five interest notes secured by the second lien. All payments were made to Commerce Trust Company and it remitted to California State Life Insurance Company the amounts which were paid for the interest coupons of the $9,000.00 note.

Defendant in error filed this suit against Commerce Farm Credit Company and plaintiff in error, Commerce Trust Company, on November 13, 1926, making the California State Life Insurance Company a party defendant by amended petition filed November 8, 1928. The case was tried before the court without a jury on July 22, 1931, and judgment rendered in substance as follows: The court found that the contract was usurious in its inception and that all payments of interest thereon constituted usury. All interest paid more than two years before the institution of the suit and also double the amount of two interest payments received by California State Life Insurance Company within two years before it was made a party were credited upon the $9,000.00 note, and that company was given judgment against defendant in error for the balance of the principal of that note with foreclosure of its lien. Judgment was rendered in favor of defendant in error against plaintiff in error, Commerce Trust Company, for $4,-229.40, representing double the amount of interest payments made by defendant in error within two years before the institution of the suit. Included in such interest payments for which penalties were adjudged against plaintiff in error were two payments of $540.00 each for interest coupons of the $9,000.00 note which were received by plaintiff in error and transmitted to California State Life Insurance Company. No judgment was rendered against Commerce Farm Credit Company.

The Court of Civil Appeals affirmed the judgment as against Commerce Trust Company and left it undisturbed as against the other defendants. 54 S. W. (2d) 1037.

Plaintiff in error seeks to differentiate this case from Shropshire v. Commerce Farm Credit Company (supra, hereinafter referred to as the Shropshire case) on account of what it insists is an important difference between the recitals in the principal notes in the two cases, arguing that "when construing a contract for usury, when the contract is made up of several parts or instruments, the terms of the principal note become of paramount importance, and where a conflict exists between the terms of the note and the wording of the deed of trust, the terms of the latter must yield." The principle here asserted finds support in the importance attached by Associate Justice Greenwood in his opinion in the Shropshire case to the terms of the note involved in Dugan v. Lewis (79 Texas, 247, 14 S. W., 1024), and in several decisions by the courts of civil appeals. See Clement v. Scott, 60 S. W. (2d) 258, (application for writ of error refused) ; Shive v. Braniff Investment Co., 68 S. W. (2d) 564; Walter v. Temple Trust Co., 60 S. W. (2d) 826. However, after comparing the notes and deed of trust appearing in the record in the Shropshire case with those which accompany the statement of facts as exhibits in this case, we find no material differences in the terms of the instruments, and further no conflict exists between the provisions of the principal notes and those of the second deed of trust in this case.

With the possible exception of the principal notes, the several written instruments constituting the contract in this case are in almost the exact language of those in the Shropshire case. The acceleration clauses in the two first deeds of trust and in the two second deeds of trust are identical. The second deed of trust in this case, as in that, expressly provides that in the event of default in the payment of any of the several interest notes secured by it "then all of said notes hereby secured shall become due and payable at the election of the holder." The principal note is not set out in the statement of facts in the Shropshire case. Proof of its terms was made only by the recitals in the first deed of trust. It is there described as providing that if the principal or any installment of interest thereon is not paid when due, then "the entire indebtedness" shall become due at the option of the holder. The first deed of trust in this case describes the provisions of the principal notes with respect to acceleration in exactly the

same language, but the recital in the notes is that in the event of default in the payment of the note or any installment of interest thereon "the principal of this and all other bonds forming a part of this series shall become due and collectible."

In all probability the terms of the principal note in the Shropshire case were identical with the terms of the principal notes in this case. But if the acceleration clause in the note in the Shropshire case was in the very language of its description in the deed of trust, there is no substantial difference between its terms and the terms of the notes in this case. That clause gave the holder the option to mature "the entire indebtedness," while these notes gave the holder the option to mature "the principal of this and all other bonds forming a part of this series." The acceleration clause in the principal note in that case, as described in the deed of trust, makes no express reference to interest, whether earned or unearned; and its language (in the absence of the acceleration clause in the second deed of trust) does not authorize the collection of unearned interest. The same is true of the acceleration clause in the principal notes in this case. In the Shropshire case as in this the principal notes gave the holder the option to collect the unpaid principal debt, and by inference earned interest. Since the acceleration clause in the principal notes does no more by its express language than to give the option to mature and collect the principal, it does not conflict with that part of the second deed of trust which gives the option to mature all of the interest notes secured by it. The principal notes contain no language either permitting or prohibiting the acceleration and collection of the notes secured by the second deed of trust upon default in the payment of one of them, but the second deed of trust deals with that subject in clear and unambiguous language. As said in the Shropshire case, "Abatement of unearned interest embodied in the second lien notes is not only not sanctioned, but is forbidden by the terms of the contract." We are mindful of the duty "to give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal." (Galveston & Houston Investment Co. v. Grymes, 94 Texas, 609, 63 S. W., 860, 64 S. W., 778.) But, we have no right to depart from the unambiguous language in which the contract is expressed, and we cannot find conflict where none exists.

We do not have in this case, as were found in Walker v. Temple Trust Company (this day decided, opinion by Judge German, 124 Texas, 575, 80 S. W. (2d) 935), terms and provisions in the notes and deeds of trust sufficient to negative

the intention disclosed by the acceleration clause in the second deed of trust to collect unearned interest.

■ The contract is usurious under the doctrine of the Shropshire case, because it empowers the holder upon default in the payment of any of the interest notes secured by the second lien to mature and collect all of said notes, thus permitting the reduction of the original term of the loan and the collection of interest in excess of the lawful rate.

According to the undisputed evidence, the interest rate contracted to be paid for the use of the money loaned, assuming the performance of the contract according to its terms, is 9.75%. The total amount of interest actually paid by defendant in error on the $9,500 loan was interest at the rate of less than 7%, as the unpaid interest coupons maturing December 1, 1928, 1929 and 1930 were on the trial tendered for cancellation. Plaintiff in error contends that thus a rate of interest less than 7% has been received and collected, and not a greater rate than 10%.

■ This contention is answered by Shropshire v. Commerce Farm Credit Company (supra, p. 417 of 120 Texas), and by Atwood v. Deming Investment Co. (U. S. C. C. A.), 55 Fed. (2d) 180, 183. Article 5071 makes contracts for usury void as to interest. When once it has been determined that the contract is tainted with usury, the stipulation for the payment of interest, the term for which the loan is made, and the time for which the money loaned is actually used become unimportant. As said in the case last cited, "such a statutory interdiction sweeps the provision for interest out of the contract, and leaves it as though it did not stipulate for the interest." In a suit for penalties, the inquiry remaining is whether there has been received or collected upon the contract within two years before the filing of the suit "a greater rate of interest than 10%." Penalties were adjudged against plaintiff in error on account of payments of interest made December 1, 1924 and December 1, 1925. Each of these annual payments was in the sum of $1,057.35. The principal debt was originally $9,500, and when these payments of interest were made the unpaid principal was $9,000. Thus each of these annual payments was, within the language of Article 5073, the payment of a greater rate than 10%.

The conclusion that these payments of interest may serve as the basis for the collection of penalties, although the rate of interest for the entire period of the loan, or the rate measured

by the total amount of interest actually paid, is less than 10%, is supported by Dallas Trust & Savings Bank v. Brashear (Com. App.), 65 S. W. (2d) 288. In that case the contracts were found to be practically identical with those in the Shropshire case, and for that reason they were held usurious. The interest contracted to be paid for the entire period of the loan was at the rate of 9%, but in that case, as here, the interest agreed to be paid during the first five years amounted to more than 10% per annum by reason of "squeezing" part of the interest into five annual payments. It was held that judgment was correctly rendered in favor of Brashear, the borrower, against Dallas Trust & Savings Bank, the lender, for double the amount of interest paid for the first year because such payment was in excess of 10% per annum. In so holding, Judge Ryan said:

"Brashear did pay to, and said bank collected, a sum greater than the original debt would produce at 10 per cent, per annum for the use of the money during the time that payment represented, and the bank became liable for the statutory penalty."

■ Our decision is, therefore, that the contract is usurious on account of the acceleration clause in the second deed of trust, and that, this being true, penalties may be collected under Article 5073 by reason of interest payments made December 1, 1924 and December 1, 1925, because such payments were at a greater rate than 10% per annum. Since the change made by the Revised Statutes of 1925 in the language of the article imposing penalties for usury, double the amount of *any* interest collected under a contract tainted with usury is no longer collectible. Penalties may now be recovered only when the payment on account of which they are claimed was at a rate in excess of 10% per annum. See Jennings v. Texas Farm Mortgage Company (this day decided, opinion by Judge Ryan), 124 Texas, 593, 80 S. W. (2d) 931; see also Adleson v. B. F. Dittmar Co. (this day decided), 124 Texas, 564, 80 S. W. (2d) 939; Simpson v. Crissom, 38 S. W. (2d) 1106; Hampton v. Guaranty Building & Loan Association, 63 S. W. (2d) 873; Cox v. Metropolitan Building & Loan Association, 74 S. W. (2d) 323.

Of the $4,229.40 adjudged against plaintiff in error, $2,160 represents double two payments made December 1, 1924 and December 1, 1925, covering interest coupons for $540 each, owned by California State Life Insurance Company. These coupons and the principal note which they accompanied had been sold and assigned to the life insurance company, and the written assignment of the note, coupons and lien filed for

record long before such payments were made. Plaintiff in error had no interest whatever in these two coupons and retained no part of the money paid in satisfaction of them, but transmitted all of it to the life insurance company. Thus in collecting this interest it but acted as agent.

■ The Court of Civil Appeals held plaintiff in error liable for these penalties on the theory that in the collection of usurious interest it was acting as a joint tort-feasor with the life insurance company, its principal. With that decision we cannot agree. This is a suit for statutory penalties, not an action for damages suffered from tort. Article 5073 denominates the action authorized to be brought as one of debt. It provides that when a greater rate of interest than 10% has been received or collected upon any contract, the person paying the same "may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same."

Furthermore, this statute imposes a penalty and therefore is to be strictly construed, at least in the sense that it is not to be extended beyond the necessities of the case and is not to be so broadened as to include persons or things outside of its immediate scope and object. State v. International & G. N. Ry. Co., 107 Texas, 349, 179 S. W., 867; Oklahoma Tool & Supply Co. v. Daniels (Com. App.), 290 S. W., 727; Railroad Commission of Texas v. Texas & N. C. R. Co., 42 S. W. (2d) 1091 (application for writ of error refused). This statute was intended to penalize one who exacts and receives the benefit of usury, not everyone who may be connected with its collection.

It is true that plaintiff in error received these interest payments in the sense that they came into its hands and passed from them when it transmitted them to its principal, but the language of the statute is not to be given a mere literal construction. If it were, then any employee of a corporation who accepted and deposited to the credit of the corporation money paid in settlement of usurious interest notes belonging to it would be personally liable for double the amount of the interest so collected.

A contract for usury is declared void as to interest and one who has received such interest is required by way of penalty to restore it and to pay also a like amount. The statute was not intended to take twice the amount paid from one who has but collected as agent and who has not profited at all from the payment. If such intention were read into the statute, the

penalty imposed upon an agent who collected usurious interest and received none of it for his own use would be double that imposed upon the principal who obtained the benefit of the payment.

It is our opinion that Article 5073 was correctly construed by Judge Jones in Deming Investment Co. v. Giddens, 41 S. W. (2d) 260, 263, where he said:

"Under this statute appellees are entitled to recover double the amount of interest from the one receiving same; *that is the one for whose benefit it was paid.*" (Italics ours.)

In Dallas Trust & Savings Bank v. Brown, 48 S. W. (2d) 1044, where the facts with respect to the ownership of the interest notes and the manner of their payment were almost identical with the facts in this case, it was held that penalties could not be recovered against the trust company for collecting usurious interest notes as agent of the life insurance company which owned them by recorded assignment from the trust company. The refusal of the application for writ of error in that case means that the Supreme Court was of the opinion that the judgment of the Court of Civil Appeals was correct and that the principles of law declared in the opinion of that court were correctly determined. Article 1728, as amended by Section 1, Chapter 144, Acts Regular Session, 40th Legislature, p. 214.

Under the undisputed facts no penalty should have been assessed against plaintiff in error on account of the interest collected by it on December 1, 1924 and December 1, 1925, as agent of the life insurance company.

The judgment of the district court and that of the Court of Civil Appeals are reformed so as to reduce the amount adjudged against plaintiff in error in favor of defendant in error from $4,229.40 to $2,069.40, the same to bear interest from August 6, 1931, at 5% per annum; and said judgments as reformed are affirmed.

Opinion adopted by Supreme Court March 27, 1935.